UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

JOHN DOE,

                            Plaintiff,

    -against-                                    3:20-CV-0257  (LEK/ML)

ROMAN CATHOLIC DIOCESE OF
ERIE, PENNSYLVANIA, *et al.*,

                            Defendants.

## **MEMORANDUM-DECISION AND ORDER**

**I.**    **INTRODUCTION**

Plaintiff John Doe brings this negligence action against the Roman Catholic Diocese of Erie, Pennsylvania (the "Erie Diocese"); Mercyhurst University ("Mercyhurst"); Sisters of Mercy of the Americas, Inc.; and Sisters of Mercy of the Americas New York, Pennsylvania, Pacific West Community, Inc. (collectively, "Defendants"). Dkt. No. 2 ("Complaint"). Now before the Court are motions to dismiss filed by Mercyhurst, Dkt. No. 24-1 ("Mercyhurst Motion"), and the Erie Diocese, Dkt. No. 36-2 ("Erie Diocese Motion"). Plaintiff opposes both motions. Dkt. Nos. 28 ("Plaintiff's Response to Mercyhurst"); 38 ("Plaintiff's Response to Erie Diocese"). Each defendant filed a reply. Dkt. Nos. 33 ("Mercyhurst Reply"); 40 ("Erie Diocese Reply"). The Court grants both motions due to lack of personal jurisdiction.

**II.**    **BACKGROUND**

    **A. Procedural History**

On March 4, 2020, Plaintiff filed a complaint against Defendants in New York Supreme Court, Tompkins County. <u>See</u> Complaint. On March 7, 2020, Mercyhurst filed a notice of removal. Dkt. No. 1. Plaintiff moved to remand on April 6, 2020. Dkt. No. 20. The Court

denied Plaintiff's remand motion on March 2, 2021. Dkt. No. 43. On May 19, 2020 and June 29, 2020, Mercyhurst and the Erie Diocese, respectively, filed the present motions. Dkt Nos. 24, 36.

### B. Factual History

Because, as discussed below, Defendants' motions are granted on personal jurisdiction grounds, the Court recounts factual allegations relevant to personal jurisdiction.

Plaintiff's claims arise from allegations that he was sexually abused by William P. Garvey as a minor throughout a period from 1964 to 1971, while Plaintiff was a student at St. John the Baptist Parish ("St. John's") of the Erie Diocese, and Garvey was a teacher at Mercyhurst and basketball coach at St. John's. See Compl. at 11.[1] Mercyhurst is and was located in Erie, Pennsylvania. See id. at 5. Mercyhurst is incorporated in Pennsylvania and has its principal place of business there. See id. The Erie Diocese has a principal place of business in Erie, Pennsylvania. See id. at 3.

While much of the alleged abuse took place on the campuses of St. John's and Mercyhurst, some took place in New York. See id. at 11–15. "During the summer of 1965, Plaintiff traveled to New York at Garvey's request to visit him on the campus" of Cornell University ("Cornell"), where he stayed with Garvey for approximately two weeks. See id. at 13. During this trip, Plaintiff stayed in his own room on Cornell's campus but was "frequently instructed by Garvey to visit Garvey's room," where Garvey abused him. See id. Garvey also abused him that same summer "during a trip to Manhattan." See id. "At the end of the summer,

---

[1] Because there are irregularities in paragraph numbering in the Complaint, the Court cites to the page numbers stamped at the bottom of each page.

Garvey returned to Erie from Cornell and continued to sexually abuse Plaintiff." Id. During the summer of 1966, "Garvey was again studying at Cornell and requested that Plaintiff visit him." Id. Plaintiff again visited Garvey for approximately two weeks, with the same living arrangement, again enduring abuse at Garvey's hands. See id. at 13–14. At the end of the summer, Garvey returned to Erie from Cornell and continued to sexually abuse Plaintiff." Id. at 14.

Garvey ultimately became President of Mercyhurst, a position in which he served from 1980–2005. See id. at 11.

### III.  LEGAL STANDARDS

"Personal jurisdiction requires a two-step analysis." Mercury Pub. Affs. LLC v. Airbus Defence & Space, S.A.U., No. 19-CV-7518, 2020 WL 4926334, at *2 (S.D.N.Y. Aug. 21, 2020) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002)). First, the Court must analyze whether the law of the state—here, New York's long-arm statute, N.Y. C.P.L.R. § 302—subjects the defendant to jurisdiction. See id. Second, the Court must evaluate whether the exercise of jurisdiction would comport with constitutional due process protections. See id.; see also Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); Friedman v. Bloomberg L.P., 884 F.3d 83, 90 (2d Cir. 2017). "The New York long-arm statute does not extend in all respects to the constitutional limits." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60–61 (2d Cir. 2012).

"There are 'two categories of personal jurisdiction: general and specific personal jurisdiction. General, all-purpose jurisdiction permits a court to hear "any and all claims" against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only

over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum.'" Thackurdeen v. Duke Univ., 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (quoting Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 134 (2d Cir. 2014)). Plaintiff does not argue that the Court has general jurisdiction over Defendants, but rather argues only that the Court has specific jurisdiction. See Pl.'s Resp. to Erie Diocese at 4–12; Pl.'s Resp. to Mercyhurst at 4–9.

Specific jurisdiction is governed by C.P.L.R. § 302(a), which empowers New York courts to exercise jurisdiction over any non-domiciliary "who in person or through an agent" has established one of four specific kinds of contact with New York:

> (1) the transaction of any business within the state or contracts anywhere to supply goods or services in New York;
>
> (2) the commission of a tortious act within this state;
>
> (3) the commission of a tortious act without the state causing injury within the state so long as the tortfeasor either (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services render, in New York or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> (4) the ownership, use, or possession of any real property within New York.

See N.Y. C.P.R.L. § 302(a)(1)–(4).

"New York courts have recognized that jurisdiction under § 302(a)(2) may extend to out-of-state individuals who did not themselves commit a tort while physically present in New York but who can be deemed responsible for such a tort based upon theories of agency or conspiracy." LaChapelle v. Torres, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014). Put another way, "if a tort is committed by a person who is physically present in New York but who is acting as

an agent of . . . an out-of-state individual, courts may attribute the in-state acts to an out-of-state defendant for the purposes of obtaining personal jurisdiction." Id.

"In determining whether an agency relationship exists for the purposes of Section 302, courts 'have focused on the realities of the relationship in question rather than the formalities of agency law.'" Maersk, Inc. v. Neewra, Inc., 554 F. Supp. 2d 424, 442 (S.D.N.Y. 2008) (quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 366 (2d Cir. 1986)). Accordingly, "[w]hether a defendant's representative is an 'agent' for purposes of § 302(a) hinges on whether the representative acted 'for the benefit of and with the knowledge and consent of [the] defendant and [the defendant] exercised some control over [the agent] in the matter.'" Emerald Asset Advisors, LLC v. Schaffer, 895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988)). "While the principal need not exercise absolute control over the decisions or acts of the putative agent," "a sufficient amount of control may involve the ability of the principal to influence such acts or decisions by virtue of the parties' respective roles." Maersk, Inc., 554 F. Supp. 2d at 442 (internal quotation marks omitted). "A plaintiff need not demonstrate . . . that the defendant exercised direct control over its putative agent." In re Welspun Litig., No. 16-CV-6792, 2019 WL 2174089, at *7 (S.D.N.Y. May 20, 2019).

## IV.   DISCUSSION

Plaintiff argues that the Court has specific jurisdiction over Defendants. See Pl.'s Resp. to Erie Diocese at 4–12; Pl.'s Resp. to Mercyhurst at 4–9. With respect to the long-arm statute, Plaintiff argues that the Court has specific jurisdiction because Garvey was acting as an agent of Defendants in New York when he committed the tortious acts that gave rise to Plaintiff's

claims. See Pl.'s Resp. to Erie Diocese at 8; Pl.'s Resp. to Mercyhurst at 8. Plaintiff has failed to establish an agency relationship.

Put simply, an "agent" for purposes of C.P.L.R. § 302(a) is a person who has "[1] acted in the state [2] for the benefit of, and [3] with the knowledge and consent of the non-resident principal." CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 366 (2d Cir.1986) (internal quotation marks omitted).

Garvey acted within the state of New York in abusing Plaintiff on Cornell's campus. But the Complaint does not contain allegations specifying that Garvey's studies benefitted Defendants, or, if so, how. Although Plaintiff asserts in his brief that Garvey's studies benefitted Defendants by enabling Garvey to become President of Mercyhurst fifteen years later, see Pl.'s Resp. to Mercyhurst at 8, the Complaint itself contains no such allegation, or any other allegations pertaining to the "benefit" prong. Plaintiff also has not alleged any facts suggesting that Defendants knew of or consented to even Garvey's general presence in New York, let alone any relevant aspect of his activities there. Cf. Love v. West, No. 19-CV-10799, 2021 WL 431210, at *4 (S.D.N.Y. Feb. 8, 2021) ("[Plaintiffs] allege that the Diocese employed, managed, and supervised West, and that it authorized and funded West's travel to New York as part of his work. As such, West's alleged tortious activity arose from activity that was for the benefit of and with the knowledge and consent of the Diocese, and the Diocese exercised some control over West in relation to the New York trip, thereby rendering West an agent of the Diocese for the purposes of C.P.L.R. § 302(a)(2)"). Plaintiff's allegations thus fall far short of establishing an agency relationship for purposes of specific jurisdiction under the

long-arm statute.[2]

Plaintiff requests jurisdictional discovery. See Pl.'s Resp. to Erie Diocese at 10–11. Jurisdictional discovery is not warranted, because Plaintiff's sparse allegations regarding agency do not amount to a "sufficient start" toward establishing personal jurisdiction. See Uebler v. Boss Media, AB, 432 F. Supp. 2d 301, 306 (E.D.N.Y. 2006). That said, it is conceivable that Plaintiff could cure the pleading defects identified by providing more specific allegations. The Court will thus entertain a motion to amend the Complaint, if filed within thirty (30) days. The Court will also entertain a renewed request for jurisdictional discovery.

V.   **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Mercyhurst and the Erie Diocese's motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (Dkt. Nos. 24, 36) are **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   March 19, 2021
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[2] Because Plaintiff has failed to satisfy the long-arm statute's requirements for specific jurisdiction, the Court need not perform constitutional due process analysis.