UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

JOHN DOE,

                              Plaintiff,

    -against-                                    3:20-CV-0257 (LEK/ML)

ROMAN CATHOLIC DIOCESE OF
ERIE, PENNSYLVANIA, *et al.*,

                              Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.**        **INTRODUCTION**

Plaintiff John Doe brings this negligence action against the Roman Catholic Diocese of Erie, Pennsylvania ("Diocese"); Mercyhurst University ("Mercyhurst"); Sisters of Mercy of the Americas, Inc. ("the Institute"); and Sisters of Mercy of the Americas New York, Pennsylvania, Pacific West Community, Inc. ("SOM New York"), (collectively, "Defendants"). Dkt. No. 2 ("Complaint"). Now before the Court is a motion to dismiss brought by the Institute and SOM New York, Dkt. No. 53 ("SOM Motion to Dismiss"), Dkt. No. 53-1 ("SOM Memorandum in Support of Motion to Dismiss"), and Plaintiff's motion to amend his Complaint, Dkt. No. 54, ("Motion to Amend"), Dkt. No. 54-6 ("Plaintiff's Memorandum in Support of Motion to Amend"). Plaintiff has opposed the motion to dismiss, Dkt. No. 55 ("Plaintiff's Response to Motion to Dismiss"), and Defendants SOM New York and the Institute have replied, Dkt. No. 56 ("SOM Reply in Support of Motion to Dismiss"). Additionally, all Defendants have opposed Plaintiff's Motion to Amend. Dkt. No. 57 ("Mercyhurst Response to Motion to Amend"); Dkt. No. 58 ("Diocese Response to Motion to Amend"); Dkt. No. 59 ("SOM Response to Motion to Amend").

For the reasons that follow, the Court denies Plaintiff's Motion to Amend and grants the Motion to Dismiss filed by the Institute and SOM New York.

## II.  BACKGROUND

### A.  Procedural History

On March 4, 2021, Plaintiff filed his Complaint against Defendants in New York Supreme Court, Tompkins County. See Complaint. On March 7, 2020, the action was removed to this Court. See Dkt. No. 1. Subsequently, each of the respective defendants filed a motion to dismiss. See Dkt. Nos. 24, 25, 36. The Diocese, Mercyhurst, and the SOM Americas defendants were dismissed from this action on the grounds that the Complaint did not establish personal jurisdiction against them in the state of New York. See Dkt. Nos. 48, 52. Plaintiff was given leave to replead to establish such jurisdiction. Id.

The remaining defendant, SOM New York, filed the present motion to dismiss for failure to state a claim on April 16, 2021. See SOM Mot. to Dismiss. Shortly thereafter, Plaintiff filed the other motion addressed in this order, Plaintiff's motion to amend his Complaint to cure the jurisdictional deficiencies outlined in the Court's grant of dismissal. See Mot. to Amend. Plaintiff's Proposed Amended Complaint reasserts causes of actions against all defendants alleging negligence, negligent training and supervision, and negligent retention. See PAC ¶¶ 130–159.

### B.  Factual History[1]

---

[1] The following facts are set forth in Plaintiff's Proposed Amended Complaint, Dkt. No. 54-7 ("Proposed Amended Complaint" or "PAC") and are accepted as true for purposes of Defendants' challenge to Plaintiff's motion to amend on the grounds that the amended pleading will be susceptible to dismissal. See Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (applying same standard to review of proposed pleading—when reviewing for futility—as is applied to a filed pleading on motion to dismiss).

Plaintiff is a 68-year-old resident of California. PAC ¶ 2.

The Diocese has its principal place of business in Erie, Pennsylvania and owns and operates St. John the Baptist Parish ("St. John's"). Id. ¶¶ 4, 13–14. St. John's is a Catholic church and school located in Erie, Pennsylvania and is owned and operated by the Diocese. Id. ¶ 33.

Mercyhurst is incorporated and has its principal place of business in Pennsylvania. Id. ¶ 16.

The Institute is a nationwide organization overseeing the activities of Regional Sisters of Mercy organizations, is incorporated in Missouri, and has its principal place of business in Maryland. Id. ¶ 22.

SOM New York is a regional Sisters of Mercy organization incorporated in Missouri with its principal place of business in Buffalo, New York. Id. ¶ 23.

Plaintiff alleges that the Institute and SOM New York own, operate, and administer Mercyhurst. Id. ¶ 29, 38, 105.

Plaintiff's claims stem from sexual abuse he suffered at the hands of William Garvey. PAC, ¶¶ 60–61. Plaintiff alleges he first encountered Garvey at the age of 13 when he played on the St. John's basketball team. Id. Garvey was employed at St. John's as the head basketball coach and athletic director. Id. at ¶ 57. Garvey was also a faculty member employed by Mercyhurst as Chairperson of the Education Division during the relevant time period. Id. ¶¶ 58, 75.

Upon Plaintiff joining the St. John's basketball team for the 1964–1965 season, Garvey "immediately began to emotionally, psychologically, and physically abuse and manipulate Plaintiff." Id. In the winter of 1965, Garvey proceeded to assault Plaintiff sexually under the

guise of training him for the team. Id. ¶¶ 63–65. Some of this abuse occurred during private workouts while other incidents occurred at Garvey's residence. Id. Some sexual abuse also occurred on Mercyhurst's Erie, Pennsylvania campus where Garvey would take Plaintiff for additional "training." Id. ¶ 68.

In the summers of 1965 and 1966, Garvey studied at Cornell University in Ithaca, New York. Id. ¶ 73. Garvey was studying to complete his Doctorate of Philosophy so that he could obtain tenure at Mercyhurst, where he later became Dean and Vice President. Id. ¶ 74.

During both summers, Garvey requested Plaintiff come to New York for training, where he stayed for two weeks each time. Id. ¶¶ 77–78. Garvey paid for Plaintiff's plane tickets, meals, and lodging. Id. ¶¶ 77, 83. Garvey sexually abused Plaintiff in New York during both trips. Id. ¶¶ 79, 84.

Garvey continued to abuse Plaintiff back in Pennsylvania at St. Johns, and later during Plaintiff's time at Cathedral Preparatory School, a high school also owned and operated by the Diocese. Id. at ¶¶ 34, 88. The abuse did not end until 1971 when Plaintiff was in college and refused Garvey's advances. Id. ¶ 88.

## III. LEGAL STANDARD

"Leave to amend should be 'freely give[n] . . . when justice so requires,' [under Federal Rule of Civil Procedure 15(a)(2)], but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 28 (2d Cir. 2016) (quoting Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008)). "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." Balintulo v. Ford Motor Co., 796 F.3d 160, 164–65 (2d Cir. 2015).

When determining if an amendment is futile due to a potential motion to dismiss, the proposed pleading must "be judged by the same standards as those governing the adequacy of a filed pleading" if it were attacked by a motion to dismiss. Anderson News, 680 F.3d at 185.

In other words, when determining if a proposed complaint would be susceptible to a motion to dismiss for lack of personal jurisdiction under F.R.C.P. 12(b)(2), a court must construe all jurisdictional allegations "in the light most favorable to plaintiffs, resolving all doubts in their favor." Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008). However, a court need not "draw argumentative inferences in the plaintiff's favor" nor "accept as true a legal conclusion couched as a factual allegation." Licci ex rel Licci v. Lebanese Canadian Bank SAL, 673 F.3d 50, 59 (2d Cir. 2012).

Likewise, when determining if a proposed amended complaint would be futile due to failure to state a claim under F.R.C.P. 12(b)(6), a proposed complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). "Nonetheless, conclusory allegations are not entitled to the assumption of truth." Francis v. Kings Park Manor, Inc., 992 F.3d 67, 72 (2d Cir. 2021).

IV.   DISCUSSION

    A.  **Plaintiff's Motion to Amend**

Plaintiff argues that amendment is not futile because the Proposed Amended Complaint alleges sufficient facts to establish personal jurisdiction over each of the Defendants. See Pl.'s Mem. in Sup. Mot. to Amend at 4; PAC ¶¶ 130–159. The Diocese, Mercyhurst, and the Institute each argue that the proposed amendment is futile because it still fails to establish personal jurisdiction. See Diocese Resp. to Mot. to Amend at 16; Mercyhurst Resp. to Mot. to Amend at 6–12, SOM Resp. to Mot. to Amend at 4–5. The Diocese, Institute, and SOM New York argue further that, even if the proposed amended complaint is sufficient to establish jurisdiction, it could not withstand a motion to dismiss for failure to state a claim. See Diocese Resp. to Mot. to Amend at 16–17; SOM Resp. to Mot. to Amend at 6–8.

   1. *Personal Jurisdiction*

At the pleading stage, Plaintiff must make a prima facie showing that the court has personal jurisdiction. Licci, 673 F.3d at 59. This showing must include "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." Id. The prima facie showing must also establish that (1) personal jurisdiction has a statutory basis and (2) exercise of jurisdiction accords with jurisdictional due process principles imposed by the Fourteenth Amendment. Id. at 59–60.

"There are 'two categories of personal jurisdiction: general and specific personal jurisdiction. General, all-purpose jurisdiction permits a court to hear "any and all claims" against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum.'" Thackurdeen v. Duke Univ., 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (quoting Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 134 (2d Cir. 2014)). Plaintiff does not claim the Court has general jurisdiction, but rather argues that the Proposed Amended Complaint alleges sufficient facts to establish specific

personal jurisdiction over the Diocese, Mercyhurst, and the Institute under New York's long arm statute, C.P.L.R. § 302(a)(2).[2] See PAC ¶¶ 30–32; Pl.'s Mem. in Sup. Mot. to Amend at 4.

Section 302(a)(2) allows a court sitting in New York to assert jurisdiction over a party that "commits a tortious act within the state." Such jurisdiction extends to out-of-state individuals who did not themselves commit a tort in New York, but "who can be deemed responsible for such a tort based upon theories of agency or conspiracy." LaChapelle v. Torres, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014); see also Emerald Asset Advisors, LLC v. Schaffer, 895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012) ("[J]urisdiction under Section 302(a)(2) may also be predicated on acts taken by an agent.").

There are three requirements for an individual to be considered an agent for jurisdictional purposes under § 302(a). The alleged agent must have acted in the state (1) "for the benefit of," and (2) "with the knowledge and consent of the non-resident principal." CutCo Industries, Inc. v. Naughton, 806 F.2d 361, 366 (2d Cir. 1986) (quotation marks omitted); Emerald, 895 F.Supp.2d at 430. And (3) the principal must exercise control over the putative agent sufficient "to influence [the agent's] acts or decisions by virtue of the parties' respective roles." Maersk, Inc. v. Neewra, Inc., 554 F. Supp 2d 424, 442 (S.D.N.Y. 2008) (citing CutCo, 806 F.2d at 366). "The bar for a plaintiff to establish agency in the jurisdictional context is set high." Rates Tech., Inc. v. Cequel Commc'ns, LLC, 15 F. Supp. 3d 409, 416 (S.D.N.Y. 2014); Abercrombie & Kent, Inc., No. 9-CV-7052, 2010 WL 286640, at *3 (S.D.N.Y. Jan. 19, 2010).

Plaintiff alleges that Garvey acted in New York for Defendants' benefit because his studies at Cornell "were in advancement of his Doctorate of Philosophy, which served to

---

[2] Plaintiff alleges jurisdiction over SOM New York under C.P.L.R. § 301 because SOM New York's principal place of business is in New York. See PAC ¶ 30. This jurisdiction is not contested by Defendants.

7

enhance Garvey's position as the Chairperson of Education Programs and further benefitted Defendants by enabling Garvey to become Dean, then Vice President, and further, President of Mercyhurst fifteen (15) years later." Pl.'s Mem. in Sup. Mot. to Amend at 5. Further, Plaintiff alleges that Mercyhurst benefited from Garvey acting as President because he opened new buildings and established sports teams on the Mercyhurst Erie campus as a result of his studies at Cornell. Id. at 6.

Plaintiff's argument encounters two problems Regarding Garvey's alleged benefit to Defendants. First, while Garvey's actions in his role as faculty at Mercyhurst may have eventually benefited Mercyhurst—and potentially benefitted the Institute as alleged owners and operators of Mercyhurst—it is unclear how this benefitted the Diocese in any way or at any time. Plaintiff does not allege a relationship between the Diocese and the faculty positions Garvey eventually held at Mercyhurst, or between the Diocese and the buildings and sports teams Garvey established for Mercyhurst.

Second, Plaintiff has confused what must be shown to meet the benefit requirement of § 302(a)(2). To establish jurisdiction, it is not merely the agent's presence in the state that must benefit the principal, rather the tortious act committed by the alleged agent must itself benefit the principal. See E. N.Y. Sav. Bank v. Republic Realty Mortg. Corp., 61 A.D.2d 1001, 1002 (App. Div. 2nd Dept. 1978) (Activities of a New York agent "will be attributed to the nondomiciliary [for jurisdictional purposes] if . . . *those activities* benefit it") (emphasis added); see also Ramgoolie v. Ramgoolie, No. 16-CV-3345, 2016 WL 11281385, at *5 (S.D.N.Y. Dec. 20, 2016) (finding no personal jurisdiction, even though tortfeasor was defendant's agent in New York, because agent's tortious acts were "committed for [his] own benefit" rather than defendant's); Do the Hustle LLC v. Rogovich, No. 3-CV-3870, 2003 WL 21436215, at *3 (S.D.N.Y. June 19,

2003) (finding no personal jurisdiction because principals must have "accepted the benefit *of the unlawful conduct*" (emphasis added)). Indeed, to assert jurisdiction over an out of state principal, the principal must be shown to be "a primary actor in the *specific matter* in question." Coast to Coast Energy, Inc. v. Gasarch, 149 A.D.3d 485, 487 (1st Dep't 2017) (emphasis added). This interpretation of § 302(a) is further supported by the plain language of the statute, which allows jurisdiction over a party who, itself, "through an agent . . . commits a tortious act," not merely a party who engages an agent who happens to commit a tortious act.

Indeed, Plaintiff does not allege, and would have great difficulty alleging, that the tortious act itself was done for the benefit of any Defendant. It is well established under New York law that sexual abuse is done for personal benefit, rather than the benefit of a principal or employer. See Ross v. Mitsui Fudosan, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (collecting cases) ("New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context"); see also Poppel v. Estate of Archibald, No. 19-CV-01403, 2020 WL 2749719, at *5 (S.D.N.Y. May 27, 2020).

Plaintiff's argument regarding Defendants' knowledge and consent faces similar issues. While the Proposed Amended Complaint alleges that Defendants knew and consented to Garvey's *presence* in New York, it is the specific tortious act that the principal must know of and consent to. See Powers-Barnhard v. Butler, No. 19-CV-1208, 2020 WL 4925333, at *10 (N.D.N.Y. Aug. 21, 2020) (finding the court lacked personal jurisdiction because plaintiff failed to allege that the agent "took *the alleged actions against Plaintiff* with [defendant's] 'knowledge and consent.'" (emphasis added))

9

Further, even if § 302(a)(2) only required that the agent's general presence in the state benefit the alleged principal, Plaintiff has failed to sufficiently allege Garvey was present in New York for the purpose of benefitting Defendants. Plaintiff asserts that Garvey obtained an education in New York, then later went on to use that education to attain positions at Mercyhurst that allegedly benefitted Defendants. Pl.'s Mem. in Sup. Mot. to Amend at 5–6; PAC ¶ 74. However, it is insufficient that the in-state action merely benefit a defendant at some point. The action itself must be taken "*for the benefit of* . . . the non-resident principal." CutCo, 806 F.2d at 366 (emphasis added). This could be shown, for example, if Defendants had requested Garvey get an education to further their own purposes; indeed, alternate formulations of the § 302(a) standard require that the principal request the activities at issue. CutCo, 806 F.2d at 366 (for jurisdiction based on agent's activities in New York, "agent must act 'at the request and for the business purposes of' the principal") (quoting Galgay v. Bulletin Co., 504 F.2d 1062, 1065 (2d Cir. 1974); East New York Savings, 61 A.D.2d at 1002 (to establish jurisdiction over out-of-state principal under C.P.L.R. § 302 for agent's in-state activities, principal must "request[] the performance of those activities in New York."). The Proposed Amended Complaint does not allege Garvey was in New York for the purpose of benefitting Defendants, but merely alleges his presence there eventually benefitted them after he returned—a no doubt subtle, but significant, distinction.

Because the Proposed Amended Complaint does not allege sufficient facts to establish personal jurisdiction under C.P.L.R. § 302(a)(2) over the Diocese, Mercyhurst, or the Institute, the Court need not determine if jurisdiction would comport with due process. See Powers-Barnhard, 2020 WL 4925333 at *10 ("[T]he Court lacks personal jurisdiction over [defendant] and does not address whether the exercise of personal jurisdiction would comport with due

process."). Plaintiff's Proposed Amended Complaint is susceptible to dismissal for lack of personal jurisdiction under F.R.C.P. 12(b)(2), thus allowing amendment would be futile. Therefore, Plaintiff's motion to amend is denied. See Spiegal v. Schulmann, 604 F.3d 72, 78 (2d Cir. 2010) (affirming denial of leave to amend where proposed amended complaint did not "provide[] any basis to demonstrate that the district court would have had personal jurisdiction over [the defendant].")

1. *Failure to State a Claim*

The Diocese, the Institute, and SOM New York further argue that, even if the Court has jurisdiction, amendment would be futile because the Proposed Amended Complaint is susceptible to dismissal under F.R.C.P. 12(b)(6). They contend the New York borrowing statute, C.P.L.R. § 202, would require application of Pennsylvania's statute of limitations, which expired long ago. See Diocese Resp. to Mot. to Amend at 16–17; SOM Resp. to Mot. to Amend at 6.[3] Plaintiff argues in response that the borrowing statute would apply New York's statute of limitations under which Plaintiff timely filed his Complaint. Dkt. No. 38 ("Plaintiff's Opposition to Diocese Motion to Dismiss") at 20; Pl.'s Resp. to Mot. to Dismiss at 6.

C.P.L.R. § 202 provides that

> [a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued. Except . . . where the cause of action accrued in favor of a resident of the state . . .

---

[3] In the Diocese' Response to Plaintiff's Motion to Amend, it reiterates the statute of limitations arguments it made in its formerly filed motion to dismiss at Dkt. No. 36-2. See Diocese Resp. to Mot. to Amend at 16–17. These arguments were never addressed because the Court granted the motion on personal jurisdiction grounds before reaching them. See generally Dkt. No. 48. In their Response to Plaintiff's Motion to Amend, the Institute and SOM New York likewise refer to and reiterate the statute of limitations arguments made in their presently pending Motion to Dismiss, arguing that none of the alterations in the PAC affect the statute of limitations analysis. See SOM Resp. to Mot. to Amend at 6.

11

In other words, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." Thea v. Kleinhandler, 807 F.3d 492, 497 (2d Cir. 2015). The critical question, then, is where the cause of action accrued, Maiden v. Biehl, 582 F. Supp. 1209, 1212 (2d Cir. 1984), and whether the accrual state's statute of limitations is shorter than New York's. Accrual occurs for purposes of Section 202 "[at] the time when, and the place where, the plaintiff first had the right to bring the cause of action." Glob. Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 528 (1999).

Plaintiff's claim that Section 202 applies to his claims is, itself, an implicit admission that the action accrued outside New York. Section 202 only applies to actions that accrued "without the state." Put differently, if the action had accrued in New York, there would be no need to utilize New York's borrowing statute set forth in Section 202.

Nevertheless, Plaintiff argues that the action accrued in New York because "injury occurred to Plaintiff within New York State. Therefore, the cause of action accrues, for the purposes of [CPLR] § 202, in New York State." Pl.'s Resp. to Mot. to Dismiss at 6.

However, the harm alleged in the Proposed Amended Complaint is the sexual abuse at committed by Garvey, and the PAC alleges this harm occurred in both Pennsylvania and New York. PAC ¶¶ 56–96. As stated above, the New York Court of Appeals has held that accrual occurs when and where, "the plaintiff first had the right to bring the cause of action." Glob. Fin., 93 N.Y.2d at 528. It is undisputed that Plaintiff's injuries first occurred during the winter of 1964–1965 when Garvey began to abuse Plaintiff in Pennsylvania. PAC ¶ 63. No harm occurred in New York until the summer of 1965. See id. ¶¶ 75–76. Thus, the action accrued in Pennsylvania. Plaintiff had no cause of action for negligence, negligent retention, or negligent

training and supervision "anywhere in the world until he was injured" in Pennsylvania. See Glob. Fin., 93 N.Y.2d at 529. It was there, and at that time, that Plaintiff first had the right to bring these causes of action against each Defendant.

Because the action accrued in Pennsylvania, the Court must determine if the Pennsylvania statute of limitations is shorter than New York's. At the time the action accrued, 1965, the statute of limitations in effect would have been Pennsylvania's general statute of limitations then located in 12 Pa. Stat. § 34 (now found in 42 Pa. Stat. § 5524) which provided 2 years to file suit. In 1984, Pennsylvania created an infant tolling provision, 42 Pa. Stat. § 5533, stating that no statute of limitations would run until a minor turned 18. See Pa. Act 1984-67 (S.B. 672). In 2001, this tolling period was extended for actions stemming from childhood sexual abuse to allow minors to sue until they reached the age of 30, see Pa. Act 2002-86 (S.B. 212), and extended again in 2019 to allow suit until the minor reached the age of 55, see Pa. Act 2019-87 (H.B. 962), 42 Pa. Stat. § 5533(b)(2)(i). The Institute and SOM New York persuasively argue that these tolling provisions do not apply to any claim that expired before they were enacted, and thus Plaintiffs claims expired in 1967. See Orozco by Orozco v. Children's Hosp. of Philadelphia, 638 F. Supp. 280, 283 (E.D. Pa. 1986) ("Because plaintiffs' action was barred in June of 1983, the minority tolling provision enacted May 30, 1984 . . . does not inure to their benefit."), aff'd, 813 F.2d 398 (3d Cir. 1987). However, even if each tolling provision did apply to Plaintiff's claims, the claims would still be untimely. Plaintiff is 68 years old, PAC ¶ 2, thus the period to file suit would have ended 13 years ago when Plaintiff was 55. See 42 Pa. Stat. § 5533(b)(2)(i). Indeed, Plaintiff does not argue that his claims would be timely under Pennsylvania law. See Pl.'s Resp. to Mot. to Dismiss. at 6.

13

By contrast, New York has enacted the Child Victims Act, which allows a one-year revival period in which a survivor of sexual abuse of any age may bring a claim previously time-barred. See NY C.P.L.R. § 214-g. This period ended August 14, 2021. Id.

Because the action accrued in Pennsylvania, and Pennsylvania's statute of limitations is shorter than New York's, C.P.L.R. § 202 obligates the Court to apply Pennsylvania's statute of limitation. This statute of limitations expired long ago. Thus, Plaintiff's claims against all Defendants are time-barred and amendment of the Complaint would be futile.

### B.  SOM New York's Motion to Dismiss

Defendant SOM New York moves for dismissal of Plaintiff's initial Complaint under F.R.C.P. 12(b)(6) arguing that Plaintiff's claims against it are time-barred and Plaintiff has otherwise failed to plead facts to establish negligence. See SOM Mot. to Dismiss at 8–16.

The claims in Plaintiff's initial Complaint are time-barred for the same reasons the claims found in the Proposed Amended Complaint are time-barred as described above. Similar to the Proposed Amended Complaint, the initial Complaint alleges that abuse first occurred at Garvey's hands in Pennsylvania. Complaint ¶¶25–26. New York's borrowing statute, Section 202, obligates the Court to apply Pennsylvania's shorter statute of limitations to Plaintiff's claims of negligence against SOM New York. This statute of limitations expired, at the most recent, 13 years ago. Thus, Plaintiff's claims are time-barred.

Because Plaintiff's claims are time-barred, the Court does not reach whether the Complaint pled facts sufficient to establish claims of negligence.

### C.  Leave to Replead

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). "Of course, where a

[party] is unable to allege any fact sufficient to support its claim, [the claim] should be dismissed with prejudice." Id.

Because Plaintiff's claims are barred by the applicable statute of limitations, any repleading would be futile, and thus, Plaintiffs claims are dismissed with prejudice. See Bonner v. Bank of N.Y. Mellon, No CV-15-3280, 2016 U.S. Dist. LEXIS 22058, at *19–20 (E.D.N.Y. Feb. 22, 2016) (denying leave to replead because "[a]ny attempt to amend claims barred by the statute of limitations is futile") (citing In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 393 (S.D.N.Y. 2003)) (adopted by Bonner v. Bank of N.Y. Mellon, 2016 U.S. Dist. LEXIS 41135 (E.D.N.Y., Mar. 28, 2016); Sentementes v. GE, No. 14-CV-0131, 2014 WL 2881441, at *9 (D. Conn. June 25, 2014) (dismissing negligence claims without leave to replead because "those claims are barred by the statute of limitations.").

V.   **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion to Amend (Dkt. No. 54) is **DENIED**; and it is further

**ORDERED**, that Defendant SOM New York's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 53) is **GRANTED**. Plaintiff's claims are **dismissed with prejudice**, and it is further

**ORDERED**, that the Clerk of the Court shall **CLOSE** this matter, and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   November 10, 2021
         Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge